## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Kenan Johnson,

                Plaintiff,

v.                                 Case No. 1:20-cv-304-MLB

Crown Equipment Corporation,

                Defendant.

_____/

## __OPINION & ORDER__

This products liability action involves an injury Plaintiff Kenan Johnson sustained while operating a RC5500, a stand-up forklift designed and manufactured by Defendant Crown Equipment Corporation.  Plaintiff moves for reconsideration of the Court's December 23, 2021 Order that struck Plaintiff's expert, Edward Beard.  (Dkt. 78.)  The Court denies that motion.  Defendant moves for summary judgment.[1]  (Dkt. 64.)  The Court grants that motion.

---

[1] Defendant requests a hearing on its motion for summary judgment.  (Dkt. 64 at 1.)  The parties have submitted briefs that comprehensively address the issue.  Defendant does not explain in its request why a

## I.    Background

In July 2017, more than six months before the incident, Plaintiff became a "mechanized stock handler" at the JC Penney distribution center in Forest Park, Georgia.  (Dkts. 64-5 ¶ 10; 69 ¶ 10.)  As part of his job, Plaintiff received federally mandated forklift training from JC Penney to be certified to operate a RC5500.  (Dkts. 64-5 ¶ 11; 69 ¶ 11.)  The training included classroom training, review of safety videos, a written examination, 40 hours of hands-on operational training, and an operational evaluation.  (Dkts. 64-5 ¶ 12; 69 ¶ 12.)  Plaintiff also reviewed JC Penney's Powered Industrial Truck Safety Rules, which provide specific safety instructions related to the operation of the RC5500 including the need to safely operate the forklift; the need to keep all body parts inside the operator compartment; the need to ensure sufficient headroom exists under overhead obstructions; and the possibility that death or serious injury could occur if the forklift was not operated

---

hearing is necessary or warranted.  Given the extensive briefing on the issue, the Court finds that Defendant's motion for summary judgment can be resolved on the written record.  Accordingly, Defendant's request for a hearing is **DENIED.**

properly.  (Dkts. 64-5 ¶ 13; 69 ¶ 13.)  After his training, Plaintiff became certified on the RC5500.  (Dkts. 64-5 ¶ 14; 69 ¶ 14.)

Plaintiff operated the forklift 40 hours per week for 6.5 months, which equals over 1,000 total operational hours.  (Dkts. 64-5 ¶ 15; 69 ¶ 15.)  During that time, Plaintiff routinely used the service brake to stop the RC5500 and did not have any issues maintaining his balance or keeping his body inside the operator compartment while moving.  (Dkts. 64-5 ¶¶ 16–17; 69 ¶¶ 16–17.)

On February 8, 2018, Plaintiff was operating a RC5500 at the JC Penney distribution center.  (Dkts. 64-5 ¶ 28; 69 ¶ 28.)  Plaintiff had full steering and braking capability, and there were no operational issues with the RC5500 on that date.  (Dkts. 64-5 ¶¶ 29–30; 69 ¶¶ 29–30.)  At one point, Plaintiff pulled his RC5500 over to the side to make room for another forklift operator to pass.  (Dkts. 64-5 ¶ 31; 69 ¶¶ 31–32; 70 ¶ 22; 73 ¶ 22.)  To stop, Plaintiff began to apply the service brake, which is activated by lifting one's left heel or foot.  (Dkts. 64-5 ¶ 33; 69 ¶ 33; 70 ¶ 23; 73 ¶ 23.)  As he did so, he drove the mast directly into an overhead steel beam that was part of the racking system at the distribution center.  (Dkts. 64-5 ¶ 32; 69 ¶ 32.)  Plaintiff was thrown from the machine.  (Dkts.

70 ¶ 24; 73 ¶ 24.)  While airborne, Plaintiff struck a pole and then hit the ground.  (Dkts. 70 ¶ 25; 73 ¶ 25.)  Once on the ground, the RC5500 spun around and hit him, knocking him across the floor.  (Dkts. 70 ¶ 25; 73 ¶



*Figure 1 – RC5500*

25.)  Plaintiff alleges he sustained severe foot and leg injuries in the crash.  (Dkts. 64-5 ¶ 1; 69 ¶ 1.)

Plaintiff does not know whether he lifted only his left heel or his entire left foot to apply the service brake.  (Dkts. 64-5 ¶ 34; 69 ¶ 34.)  Plaintiff testified that before hitting the overhead beam, he did not have any issues maintaining his balance and his entire body was inside the operator compartment. (Dkts. 64-5 ¶¶ 35, 37; 69 ¶¶ 35, 37; 70 ¶ 26; 73 ¶ 26.)  No part of Plaintiff's body exited the operator compartment until after he struck the overhead beam.  (Dkts. 64-5 ¶ 38; 69 ¶ 38; 70 ¶ 27; 73 ¶ 27.)

The operator compartment of a RC5500 is enclosed on three sides and partially enclosed on the fourth side with a 3/8-inch-thick wrap-around steel wall.  (Dkts. 64-5 ¶ 5; 69 ¶ 5.)  The design of the RC5500 places the operator in a side stance position and allows for 5

points of body-to-truck contact during operation.  (Dkts. 64-5 ¶¶ 6–7; 69 ¶¶ 6–7.)  The operator's two feet (points 1 and 2) are on the suspended floor; the operator leans against the padded backrest (point 3) that touches his or her left hip; the operator's right hand (point 4) is on the multi-function control handle; and the operator's left hand (point 5) is on the steering tiller knob.  (Dkts. 64-5 ¶ 8; 69 ¶ 8.)  The service brake may be activated by the operator raising his or her left foot or heel.  (Dkts. 64-5 ¶ 9; 69 ¶ 9.)

RC5500s are sold affixed with warnings that describe safe operation.  (Dkts. 64-5 ¶ 18; 69 ¶ 18.)  Plaintiff could not recall whether he read any warnings on the RC5500.  (Dkt. 71-2 at 67:13–16.)  The operator manual also contains many warnings. (Dkts. 64-5 ¶ 20; 69 ¶ 20.)

These warnings are part of the training Plaintiff received. (Dkts. 64-5 ¶ 19; 69 ¶ 19.)  As an example, the warning pasted here is on the RC5500 and in the operator's manual.  (Dkts. 64-5 ¶ 20; 69 ¶ 20.)  Plaintiff testified he understood the importance of



⚠ **WARNING**

**It's the law, you must be trained and certified to operate this truck.** (OSHA § 1910.178, Rev. 1999)

You or others around you can be seriously injured or even killed if you don't use this truck correctly.

Read and obey all warnings and instructions in this Manual* and on the truck.

Head, arms, hands, legs or feet outside the operator area can be pinned or crushed whenever the truck is moving. Stay within the operator area and **stop the truck completely before getting off.**

However, tipovers and falls from docks can cause serious injury or even death. **Immediately exit and move away from the truck in these emergencies.**

You can be trapped or crushed by driving the operator area under racks or other objects.  **Look where you are going.**

Inspect your truck before starting work, make sure it is in good working order.

* Additional copies of this Operator Manual and all Truck Labels can be obtained from Crown Equipment Corporation, New Bremen, Ohio  45869 U.S.A.

keeping his body inside the operator compartment while the RC5500 was moving; the need to operate the RC5500 at a safe speed; and the possibility that he could be seriously injured or killed if he did not correctly operate the machine. (Dkts. 64-5 ¶¶ 25–27; 69 ¶¶ 25–27.)

The documents include no warning specifically about the risk of ejection. (Dkts. 70 ¶¶ 15, 17; 73 ¶¶ 15, 17; 71-6 at 27:7–30:4.) Defendant knew that forklifts might come into contact with fixed objects in a warehouse environment. (Dkt. 71-7 at 27:19–28:7; *see also* Dkts. 70 ¶ 9; 73 ¶ 9.) Since at least 1996, Defendant has also known about the potential for operators to be ejected from a forklift after hitting a fixed object. (Dkts. 70 ¶¶ 8, 13; 73 ¶¶ 8, 13.) Based on accident reports, Defendant was aware of a few rare instances in which an operator was ejected from the operator compartment when the forklift struck a fixed object. (Dkts. 70 ¶ 10; 73 ¶ 10; 71-7 at 28:8–29:10.)

Plaintiff alleges Defendant "failed to warn [him] that the forklift could pose a serious hazard when operated." (Dkts. 64-5 ¶ 3; 69 ¶ 3.) Plaintiff said that, if the RC5500 had his desired warning (i.e., a warning that you could be thrown from it), he "probably" would not have used the

6

equipment.  (Dkt. 71-2 at 171:5–10; *see also* Dkts. 64-5 ¶ 39; 69 ¶ 39; 70 ¶ 21; 73 ¶ 21.)

## II.   Motion for Reconsideration

### A.   Legal Standard

"The Court does not reconsider its orders as a matter of routine practice." *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1223 (N.D. Ga. 2012) (citing LR 7.2(E), NDGa).  Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice," but only when "absolutely necessary."  LR 7.2(E), NDGa.  Such absolute necessity arises only when there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003).  A motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." *Id.* at 1259. Nor may it be used "to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an

earlier stage in the litigation." *Adler v. Wallace Comput. Servs., Inc.*, 202 F.R.D. 666, 675 (N.D. Ga. 2001).  Finally, "[a] motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), *aff'd*, 87 F.3d 1242 (11th Cir. 1996).  "Motions for reconsideration are left to the sound discretion of the district court and are to be decided 'as justice requires.'" *Belmont*, 896 F. Supp. 2d at 1223.

## B.    Discussion

On December 23, 2021, the Court granted Defendant's motion to exclude the testimony of Plaintiff's expert Edward Beard.  (Dkts. 63; 77.) The Court found it would not assist the trier of fact to hear Mr. Beard's opinions about the potential for an operator to lose his or her balance when applying the service brake and the need for a warning about that risk since Plaintiff testified that did ***not*** happen to him.  (Dkt. 77 at 11.) The Court devoted a page of its Order to criticizing Plaintiff's opposition brief for "fail[ing] to engage with Defendant's argument on this point in any substantive manner":

Plaintiff did not counter Defendant's argument by explaining why Mr. Beard's opinions remain relevant and helpful in the light of Plaintiff's testimony. Instead, Plaintiff set forth a generalized argument that uses a lot of words to say nothing. (Dkt. 68 at 11–13.) Plaintiff's failure to address Defendant's specific criticism of Mr. Beard's opinions and failure to move beyond the general is dispositive. Plaintiff, as the proponent of Mr. Beard as an expert, bears the burden of establishing helpfulness to the trier of fact, and Plaintiff failed to meet his burden. *Frazier*, 387 F.3d at 1260. The Court grants Defendant's *Daubert* motion and excludes Mr. Beard from testifying. *See, e.g., Joiner*, 522 U.S. at 144–47 (finding no abuse of discretion in district court's exclusion of expert testimony when the proponent's response was nonresponsive to the critique of the opponent).

(*Id.* at 12–13 (footnote omitted).) Now Plaintiff wants a second chance—he moves for reconsideration of that Order, arguing the Court made clear errors of fact and law. (Dkt. 78 at 3.) Specifically, Plaintiff argues the Court erred in "finding that the imbalance caused by Plaintiff's application of the service brake alone caused the ejection[ because t]hat is not Mr. Beard's opinion." (*Id.*) According to Plaintiff, "Mr. Beard's opinion is that it was the forces generated by the impact that led to his imbalance and ejection." (*Id.*) The Court rejects this argument for two reasons.

First, Plaintiff had his opportunity to explain to the Court why Mr. Beard's testimony would assist the trier of fact but failed to do so in any

substantive manner as explained in the December 23rd Order and above. Plaintiff's position that Mr. Beard's opinions relate to an "imbalance condition" that occurs when an operator is required to lift his entire foot to apply the service brake (as opposed to an actual loss of balance) was never raised in the initial briefing.  A motion for reconsideration is not a vehicle to present new arguments that should have been raised earlier. *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).  Plaintiff should have made these arguments in its opposition brief to Defendant's motion during the briefing of this issue back in April and May of 2021.

Second, the Court does not find support for Plaintiff's characterization of Mr. Beard's opinions in the plain language of his opinions.  Mr. Beard's four opinions state:

1. It is my opinion that manufacturers and designers of machinery must follow the established safety design priorities, as recognized by the National Safety Council and other peer reviewed publications, to minimize hazards to users, and that this was not done with regard to the loss of balance hazard associated with the open operator's compartment of the Crown model number RC5530-35TT226, serial number 1A328622 lift truck.

2. It is my opinion it was foreseeable that, in circumstances where the deadman brake was applied at travel speeds in the forks trailing direction, the deceleration in this

direction would have a tendency to move the operator toward the operator's compartment opening. This is exacerbated by the fact that the left or outermost leg of the operator would necessarily be raised to actuate the brake, causing an imbalance condition and allowing the person's center of gravity to shift outside of the stability zone. Additional force in the direction of the raised leg would have a tendency to rotate the operator's body in that direction, and in circumstances where this is sudden and unanticipated, the result could be the operator's body or portions of their body being ejected from the machine.

3. It is my opinion that the loss of balance that caused Mr. Johnson to be ejected from the truck was a foreseeable hazard and should have been addressed by Crown on the subject model number RC5530-35TT226, serial number 1A328622 lift truck.

4. It is my opinion that Crown did not apply the top 2 safety design priorities to the subject model number RC5530-35TT226, serial number 1A328622 lift truck with regard to the likelihood of an operator losing his balance due to rapid deceleration during braking. Additionally, there were no warnings on the truck highlighting what can happen to the operator's balance when the brakes are applied or the magnification of this hazard with an impact, and similarly no warnings or language in the operator's manual regarding this issue. This constitutes a design defect and makes the truck unreasonably dangerous. This directly contributed to the circumstances that caused the accident.

(Dkt. 63-2 at 28.)  The Court's decision to exclude Mr. Beard's testimony

was based on the plain language of these four opinions.  They depend on

the assumption it is a hazard that operators lose their balance when they

apply the service brake.  That opinion is not relevant given Plaintiff's

testimony that he did ***not*** have any issues maintaining his balance while applying the service brake, including immediately before he struck the overhead beam.  The Court agrees with Defendant that Plaintiff is "attempt[ing] to recraft Mr. Beard's opinions to avoid the findings in the Court's Order."  (Dkt. 79 at 8, 10.)  The Court denies Plaintiff's motion for reconsideration.

## III.   Motion for Summary Judgment

### A.   Legal Standard

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *W. Grp. Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1360 (11th Cir. 1999) (citing *Anderson*, 477 U.S. at 248).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 1361 (citing *Anderson*, 477 U.S. at 248).

The party moving for summary judgment bears the initial burden of showing the court, by reference to materials in the record, that there

is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The nonmoving party then has the burden of showing that summary judgment is improper by coming forward with "specific facts" showing there is a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)). Ultimately, there is no "genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A district court must "resolve all reasonable doubts about the facts in favor of the non-movant[] and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alteration adopted) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

**B.    Discussion**

To prove a products liability claim based on a failure to warn, Georgia law requires a plaintiff to show "that the defendant had a duty to warn, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010) (applying Georgia law).  A manufacturer has a duty to warn of "nonobvious foreseeable dangers from the normal use of its products."  *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 289 (11th Cir. 1994) (applying Georgia law). The duty to warn is, in general, based on knowledge: "[T]he duty to warn arises whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product." *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 211 (Ga. 1994).

It is well established in Georgia that a manufacturer has no duty to warn of a product-connected danger which is obvious or generally known. *Vickery v. Waste Mgmt. of Ga., Inc.*, 549 S.E.2d 482, 484 (Ga. Ct. App. 2001).  Whether a danger is open and obvious is determined from an objective point of view. *Cochran v. Brinkmann Corp.*, 2009 WL 4823854, at *6 (N.D. Ga. Dec. 9, 2009).  The plaintiff bears the burden of

establishing the danger was latent, not patent.  *Id.*; *see also Weatherby v. Honda Motor Co.*, 393 S.E.2d 64, 66 (Ga. Ct. App. 1990) ("[T]he 'open and obvious rule' imposes on a plaintiff the burden of proving that the peril-causing injury is latent, or not patent."), *reversed on other grounds by Ogletree v. Navistar Int'l Transp. Corp.*, 500 S.E.2d 570 (Ga. 1998).  While in many cases, the obviousness of a danger will be a question for the jury, it may be determined as a matter of law in "plain and palpable cases." *Cochran*, 2009 WL 4823854, at *6.

The RC5500 has an open operator compartment.  Defendant contends it is thus obvious that, if an operator drives a RC5500 into a fixed object like an overhead obstruction, the operator can be ejected from the compartment.  (Dkts. 64-1 at 11; 74 at 2.)  Plaintiff says the danger of operator ejection in response to contact with a fixed object is not open or obvious: "Just because an operator may see that the operator compartment has an opening, does not mean the operator understood that he or she could be ejected through that opening if an impact occurs at a particular angle and direction."  (Dkt. 71 at 11.)  Both parties marshal the cases that support their argument.  Although some of the

cases are more relevant than others, the Court considers each case to be a helpful data point in answering the question before it.

Plaintiff mainly relies on *Boyce v. Gregory Poole Equipment Co.*, 605 S.E.2d 384 (Ga. Ct. App. 2004), and *Bryant v. BGHA, Inc.*, 9 F. Supp. 3d 1374 (M.D. Ga. 2014), to support his argument the danger in this case is not obvious. In *Boyce*, an employee was operating a standup forklift, which did not have a rear-guard door on the operator compartment, while others were operating regular forklifts nearby. 605 S.E.2d at 386. The fork of a parked forklift entered the operator compartment of the standup unit and speared the employee's leg, severing an artery and killing him. *Id.* The trial court granted summary judgment to the forklift seller on both strict liability and negligence theories. *Id.* at 386. The appellate court reversed the grant of summary judgment on negligence. *Id.* In so doing, it discussed the open and obvious rule in conjunction with design defect issues:

> If the standup forklift is used alone, then the absence of a rear guard-door poses no obvious risk or danger to the operator, because the danger comes only when such forklift is used in close proximity with other forklifts, which forks could enter the operator's compartment from the sides or rear; therefore, there exists a factual jury issue as to whether or not such absence of a rear guard-door constitutes a patent or a latent defect. If the absence of any rear guard-door may be patent,

the danger thus created is not readily obvious, except when the use has been studied as [the forklift seller] did, and this may make the product unreasonably unsafe for such ordinary use; the availability of the rear guard-door as an option and the risk in actual use in close proximity with other regular forklifts creates a material issue of fact as to whether such were latent or patent defects and whether the product as designed was "reasonably safe" for use without the rear guard-door, which the seller should have known and warned of after assuming to investigate and to observe [the employer's] plant operations.

*Id.* at 388–89 (internal citation omitted).  The danger in *Boyce* arose from the possible use of the forklift in close proximity to other forklifts that might pose a threat given the way the two different machines might interact with each other.  The court of appeals determined a jury must decide whether the danger was latent or patent.  That is not at all the case here, in which the threat arose from running into a fixed object—an obvious danger that (as explained below) Plaintiff indisputably understood.

In *Bryant*, the plaintiff broke his neck while climbing down a hunting tree stand when his pant leg caught on a three-quarter-inch protrusion.  9 F. Supp. 3d at 1380.  The plaintiff relied on two experts: one noting that, while the user could tell the protrusion rose above the top rung by three-quarters of an inch, the user would not recognize the

inherent danger it created, *id.* at 1396 ("It's obvious it sticks up to three-quarters of an inch.  Its importance is not obvious."), and the other expert similarly stating that the mere fact the protrusion was visible did not mean people would understand the difference.  , *id.* ("[T]he mere fact the protrusion is visible 'doesn't mean people are going to pick up the significance of it.  Whether your brain is going to recognize it as a hazard really depends on your experience with safety.'").  Based exclusively on the testimony from these two experts, the court held that a question of fact exists as to whether the protrusion was an obvious danger.  *Id.* at 1395–96.   Here, no such testimony is available because the Court excluded Mr. Beard from testifying.  (*See* Dkt. 77.)  *Bryant* is thus no longer analogous.

On the other hand, Defendant mainly relies on *Daniels v. Bucyrus-Erie Corp.*, 516 S.E.2d 848 (Ga. Ct. App. 1999), and *Weatherby*, 393 S.E.2d 64, to support its argument that the danger in this case is obvious.[2]  In *Daniels*, a crane operator failed to placed supports under

---

[2] Defendant also relied on *Wabash Metal Products, Inc. v. AT Plastics Corp.*, 575 S.E.2d 683 (Ga. Ct. App. 2002).  The portions of *Wabash* that Defendant relies on are from the concurrence in part, which dissented from the majority's conclusion that the manufacturer was not entitled to

two of the crane's horizontal, stabilizing arms.  516 S.E.2d at 849.  One of the unsupported stabilizers sank into the ground, causing the crane to topple over and hurting plaintiff, who was working nearby.  *Id.*  The appellate court affirmed the trial court's grant of summary judgment for the crane manufacturer.  *Id.* at 850.  It relied on the doctrine that a manufacturer has no duty to warn of a product-connected danger of which the person who claims to be entitled to the warning has actual knowledge: "[plaintiff] admits that the crane operator was keenly aware of the very risks about which [plaintiff] claims he should have been warned.  The warnings proposed by [plaintiff's] experts would have provided the crane operator with no unknown information."  *Id.* at 849–50; *see also Bodymasters Sports Indus. v. Wimberley*, 501 S.E.2d 556 (Ga. Ct. App. 1998) ("[S]ince [the plaintiff] was aware of the danger she claims she should have been warned against, the failure to post signs warning of such danger could not have been the proximate cause of her injury.").

Lastly in *Weatherby*, a boy was riding an off-road motorcycle with a missing gas cap over uneven terrain.  393 S.E.2d at 65.  Gasoline

---

summary judgment.  (Dkt. 64-1 at 14); *Wabash*, 575 S.E.2d at 687.  Since the concurrence in part is not binding, the Court declines to consider it.

splashed from the tank, dribble into the exposed spark plug, and ignited, severely burning the child.  *Id.*  Plaintiff sued claiming the motorcycle should have had a warning that there was no tether on the gas cap, that gas could leak if the gas cap was missing, and that a fire could erupt as a result. The trial court granted summary judgment to the motorcycle manufacturer because the absence of a tether connecting the gas cap to the tank and the danger of riding a motorcycle with an uncapped gas tank was open and obvious, meaning there was no duty to warn.  *Id.*  The appellate court affirmed.  *Id.* at 67–68.[3]  It began by noting that the absence of a device to prevent loss of the gas cap or prevent fuel spillage when the gas cap is removed was obvious.  *Id.* at 67.  It then specified that the danger at issue was the open fuel tank resting over the motorcycle engine and spark plug: "The open fuel tank surely suggests the possibility of spillage and particularly so on a vehicle designed for off road use.  As the fuel tank is located above the engine, gravity can be anticipated to bring the spilled fuel in contact with the engine and spark plug."  *Id.*

---

[3] As noted above, *Weatherby* was later reversed on other grounds by *Ogletree.*

The Court finds *Weatherby* the most analogous.  Like the absence of a gas cap tether, the absence of a door or wall on the RC5500 is obvious. The danger at issue is the potential for ejection when the forklift hits a fixed object.  And like the open fuel tank resting over the motorcycle engine and spark plug, the open operator compartment surely suggests the possibility of ejection upon collision with a fixed object.  Every operator (including Plaintiff) would see the open operator compartment and realize he or she could be ejected if he or she hits something—an open and obvious threat for which no warning is necessary.  *Daniels*, 516 S.E.2d at 850 (citing precedent for conclusion "it is well-established that there is no duty resting upon a manufacturer or seller to warn of a product-connected danger which is obvious or generally known, or of which the person who claims to be entitled to the warning has actual knowledge").  As Defendant notes, this would be analogous to a motorcycle driver claiming he needed a warning that he could be ejected from the motorcycle if he struck a fixed object, such as another vehicle or telephone pole.  (Dkt. 74 at 6.)  The Court finds, as a matter of law, that the danger in this case was open and obvious.

Assuming Defendant had a duty to warn, which the Court concludes it did not, Plaintiff must then show Defendant breached that duty and the breach was the proximate cause of his injuries.  Plaintiff contends that he could have protected himself from injury if he had only been told about the hazard. (Dkt. 71 at 26.)  This argument ignores the fact he received specific warnings about the need to avoid striking the very fixed object at issue (i.e., an overhead beam), which would have prevented Plaintiff's ejection and injury.   Both the RC550 and the operator's manual contained warnings to avoid the injury claimed here. JC Penney's Powered Industrial Truck Safety Rules, which Plaintiff reviewed as part of his training, specifically warns of the need to ensure sufficient headroom exists under overhead obstructions and the possibility that death or serious injury could occur if the lift truck was not operated properly. (Dkts. 64-5 ¶ 13; 69 ¶ 13.)  A warning label both on the RC5500 and its operator's manual cautions operators that they "can be trapped or crushed by driving the operator area under racks or other objects" so they should look where they are going. (Dkts. 64-5 ¶ 20; 69 ¶ 20.)  Plaintiff testified that he understood the importance of keeping his body inside the operator compartment while the RC5500 was moving;

22

the need to operate the RC5500 at a safe speed; and the possibility that he could be seriously injured or killed if he did not correctly operate the RC5500. (Dkts. 64-5 ¶¶ 25–27; 69 ¶¶ 25–27.) Despite understanding all these warnings, Plaintiff drove the RC5500 into a fixed object. Had Plaintiff heeded these warnings, the injury alleged would have been prevented. Indeed, he was only ejected *after* the RC5500 struck the overhead beam. For these reasons, there is nothing to suggest a warning about ejection would have prevented Plaintiff's injury.[4] Put differently, "since [he] was aware of the danger [he] claims [he] should have been warned against, the failure to post signs warning of such danger could not have been the proximate cause of [his] injury." *Bodymasters Sports Indus. v. Wimberley*, 501 S.E.2d 556, 561 (1998).

Plaintiff's failure to warn claim is barred, as the danger was open and obvious. Moreover, Plaintiff ignored the warnings, which if heeded,

---

[4] Plaintiff points to his testimony that if the RC5500 had his desired warning, he "probably" would not have used the equipment. (Dkts. 71 at 26; 71-2 at 171:5–10.) But this is a speculative response. Moreover, "[t]he purpose of a warning is to provide information to allow the user of a product to avoid harm or injury," *Cochran*, 2009 WL 4823854, at *7, not to dissuade he or she from using the product altogether.

would have prevented his injuries.  There being no genuine issue for trial, Defendant is entitled to summary judgment.

## IV.   Conclusion

The Court **DENIES** Plaintiff's Motion for Reconsideration (Dkt. 78).

The Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 64).  The Clerk is **DIRECTED** to **CLOSE** this case.

**SO ORDERED** this 1st day of March, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE